UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**D. M. ROTTERMOND INC.**,
*a Michigan corporation*,

    Plaintiff,

vs.                                                       Case No.:
                                                              Hon.

**TALINE SHIKLANIAN**,
*an individual*, and
**TALINE'S FINE JEWELRY LLC**,
*a Michigan limited liability company*,

    Defendants.

---

**CLARK HILL PLC**
**Jeremy S. Motz (P69022)**
151 S. Old Woodward Ave., Suite 200
Birmingham, MI 48009
(248) 988-5895
jmotz@clarkhill.com
   *-and-*
**Benjamin I. Shipper (P77558)**
500 Woodward Ave., Suite 3500
Detroit, Michigan 48226
(313) 965-8300
bshipper@clarkhill.com
*Attorneys for Plaintiff*

---

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

NOW COMES Plaintiff **D. M. Rottermond Inc.** ("Rottermond" or "Plaintiff"), through its attorneys Clark Hill PLC, and for its Verified Complaint for

Injunctive and Other Relief ("Verified Complaint") against Defendants **Taline Shiklanian** ("Shiklanian") and **Taline's Fine Jewelry LLC** ("Taline's Fine Jewelry") (collectively, "Defendants") states as follows:

## INTRODUCTION

1. Plaintiff D. M. Rottermond Inc.—a high-end custom jewelry retailer—brings this action for monetary damages and injunctive relief against its former employee (Defendant Shiklanian) and the former employee's newly formed competing jewelry store (Defendant Taline's Fine Jewelry), for, among other things, Defendants' misappropriation of Plaintiff's trade secrets and breach of certain restrictive employment agreements between Plaintiff and Defendant Shiklanian.

## PARTIES AND JURISDICTION

2. Plaintiff is a Michigan corporation with its principal places of business in the Counties of Oakland and Livingston, State of Michigan, both of which are within this District.

3. Upon information and belief, Defendant Shiklanian is an individual residing in the County of Livingston, State of Michigan, within this District.

4. Taline's Fine Jewelry is a Michigan limited liability company with its principal place of business in the County of Livingston, State of Michigan, within this District.

5. This Court has jurisdiction over Plaintiff's federal Defend Trade

Secrets Act claim pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c). This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.  This Court has personal jurisdiction over Defendants because they reside in and transact business within the State of Michigan.

7.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because both Defendants are located and reside within this District, and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District.

## STATEMENT OF FACTS

8.  Plaintiff operates Rottermond Jewelers, a high-end custom jewelry store with two locations, in Milford, Michigan (the "Milford Store"), and Brighton, Michigan (the "Brighton Store").

9.  Defendant Shiklanian is a former employee of Plaintiff who worked most recently at Plaintiff's Milford Store.

10. Plaintiff first hired Defendant Shiklanian in or around June 2017.

11. On June 28, 2017, as part of the commencement of Defendant Shiklanian's employment with Plaintiff, Defendant Shiklanian signed a "No Competition, Non-Disclosure, and Confidentiality Agreement" with Plaintiff (the "Restrictive Agreement"). A copy of the Restrictive Agreement is in Defendant

3

Shiklanian's possession and therefore it need not be attached here but is nevertheless appended to this Verified Complaint as **Exhibit 1**.

12. In relevant part, the Restrictive Agreement provides that, during Defendant Shiklanian's employment with Plaintiff, and for one year after her employment with Plaintiff terminates, Defendant Shiklanian is prohibited from "engag[ing] in or contribut[ing] my knowledge to any work which is competitive with the work" Defendant Shiklanian performed during the one year immediately prior to the termination of Defendant Shiklanian's employment. **Exhibit 1** ¶ 1.

13. The geographic scope of the employment and competitive aspects of the Restrictive Agreement is a 25-mile radius around Plaintiff's jewelry stores (i.e., its Milford Store and its Brighton Store). *Id.*

14. In addition, the Restrictive Agreement provides that, "[b]oth during and after" Defendant Shiklanian's employment with Plaintiff, Defendant Shiklanian is prohibited from "directly or indirectly disclos[ing] or us[ing] for the benefit of myself or any other person or business, any trade secret or confidential information" Defendant Shiklanian acquired during her employment with Plaintiff, and that she "will not use such trade secrets or confidential information in any way other than as an employee of [Plaintiff] to further [Plaintiff]'s interests." *Id.* ¶ 2.

15. The Restrictive Agreement defines "trade secrets and confidential information" as "includ[ing] any compilation of information used by [Plaintiff]

4

which gives it an advantage over competitors who do not know or use it," including "documentation, drawings, designs, molds, picture[s], waxes, personnel data, payroll data, financial information, billing information, customer lists, information about customers' practices and requirements and product designs[,] and . . . confidential information which [Plaintiff] obtains from any of its customers or any other parties." *Id.*

16. Throughout her employment, Plaintiff employed Defendant Shiklanian as a sales associate.

17. As a sales associate, Defendant Shiklanian acquired knowledge of: Plaintiff's customer lists and contact information; information about Plaintiff's customers' practices, requirements, and product designs; Plaintiff's financial and billing information, including its pricing for services and jewelry items, cost and profit structures; and other commercially sensitive information, devices, methods, techniques, and processes from which Plaintiff derives economic value by maintaining the secrecy of such information.

18. As a sales associate, Defendant Shiklanian also worked directly, and established contacts and business relationships, with Plaintiff's client and prospective clients.

19. On or around March 16, 2020, Plaintiff laid off Defendant Shiklanian (and other employees of Plaintiff) as a result of Plaintiff's general reduction in its

5

workforce following the State of Michigan's implementation of certain COVID-19 pandemic restrictions and their anticipated effect on Plaintiff's business.

20. In or around June 2020, after several of the State of Michigan's COVID-19 pandemic restrictions were eliminated or relaxed, Plaintiff invited Defendant Shiklanian to become reemployed with Plaintiff, but Defendant Shiklanian refused.

21. On June 26, 2020, Plaintiff sent a copy of the Restrictive Agreement to Defendant Shiklanian.

22. Toward the end of July 2020, Defendant Shiklanian contacted Plaintiff and asked to be released from the Restrictive Agreement, which Plaintiff refused to do.

23. Unbeknownst to Plaintiff at the time, on or about July 9, 2020—prior to asking Plaintiff to release her from the Restrictive Agreement—Defendant Shiklanian filed articles of organization to operate a competing high-end custom jewelry store called "Taline's Fine Jewelry," in violation of the Restrictive Agreement. **Exhibit 2**.

24. Plaintiff first learned about Defendant Shiklanian's breach of the Restrictive Agreement after the *Livingston Daily*, a local newspaper, published a November 21, 2020, article about the grand opening of Defendant Shiklanian's store at 102 West Grand River Avenue, Howell, Michigan. **Exhibit 3** (available at

https://www.livingstondaily.com/story/news/local/community/howell/2020/11/21/historic-building-gets-reboot-new-jeweler-yoga-studio-howell/3775903001).

25. Defendant Taline's Fine Jewelry's Howell storefront is squarely within the Restrictive Agreement's 25-mile geographic restriction from both its Milford Store and its Brighton Store. *See also* **Exhibit 4**.

26. As part of a promotional interview Defendant Shiklanian granted to the *Livingston Daily*, Defendant Shiklanian discussed how, after the termination of her employment with Plaintiff—which the newspaper mentions by name—Defendant Shiklanian's "cousin's wife, Krystal Shiklanian, encouraged her to open her own store." **Exhibit 3**.

27. Defendant Taline's Fine Jewelry's website states that Defendant Shiklanian previously worked in jewelry store showrooms (e.g., while employed with Plaintiff), and that she intends to use the "knowledge [she] accrued" there to sell jewelry to clients at Defendant Taline's Fine Jewelry's. *See* https://www.talinejewelry.com/about.

28. Defendant Taline's Fine Jewelry's website further lists rings, necklaces, earrings, bracelets for sale at price ranges from $22.00 to $15,900.00. *Id.*

29. Despite owning and operating Taline's Fine Jewelry, on December 10, 2020, Shiklanian sought an extension of unemployment benefits paid to her by Plaintiff.

7

30. During the weeks leading up to the 2020 Christmas holiday—which is a notoriously busy time of year during which Plaintiff engages in its highest volume of sales—one of Plaintiff's long-tenured employees learned that Defendants had contacted several of Plaintiff's long-time customers to inform them of Defendants' new competing jewelry store and to solicit them for jewelry sales, in further violation of the Restrictive Agreement.

31. In addition to Defendants' two attempts to solicit Plaintiff's long-time clients of which Plaintiff is presently aware, Defendant Shiklanian has, upon information and belief, disclosed and/or used Plaintiff's trade secrets and confidential information and breached the Restrictive Agreement in other ways.

32. On December 23, 2020, Plaintiff sent Defendants a letter addressed to Defendant Shiklanian at Defendant Taline's Fine Jewelry's registered address advising her of her obligations under the Restrictive Agreement; that Defendant Shiklanian is unlawfully competing with Plaintiff through her operation of Defendant Taline's Fine Jewelry; and asking Defendants to cease and desist from any further breaches of the Restrictive Agreement.

33. Upon information and belief, Defendant Shiklanian is still operating Defendant Taline's Fine Jewelry from its Howell storefront.

34. If Defendants are not enjoined from violating and/or interfering with the Restrictive Agreement and/or misappropriating Plaintiff's trade secrets, Plaintiff

will suffer substantial and irreparable harm, including but not limited to the continued loss of confidential and trade secret information, clients and prospective clients, and goodwill.

### COUNT I—Violation of the Federal Defend Trade Secrets Act
### (against all Defendants)

35. Plaintiff realleges all the foregoing paragraphs as if they were fully restated herein.

36. Plaintiff's confidential, proprietary, and trade secret information includes its customer lists and contact information, information about Plaintiff's customers' practices, requirements, and product designs, Plaintiff's financial and billing information, including its pricing for services and jewelry items, cost and profit structures.

37. This confidential, proprietary, and trade secret information individually and collectively constitutes a "trade secret" within the meaning of the federal Defend Trade Secrets Act (*i.e.*, 28 U.S.C. § 1839(3)).

38. Plaintiff has taken reasonable measures to keep such confidential, proprietary, and trade secret information secret.

39. Plaintiff's confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

40. Plaintiff's confidential, proprietary, and trade secret information is related to services used in, or intended for use in, interstate commerce.

41. Defendants misappropriated Plaintiff's confidential, proprietary, and trade secret information by disclosing and using (and planning to disclose and use) said information without express or implied consent.

42. At the time Defendants disclosed and used (and planned to disclose and use) Plaintiff's confidential, proprietary, and trade secret information, Defendants knew or had reason to know that they acquired said information: through improper means; under circumstances giving rise to Defendants' duties to maintain the secrecy of said information and limit its use; and from or through individuals who owed a duty to maintain the secrecy of said information and limit its use.

43. Defendants' misappropriation of Plaintiff's confidential, proprietary, and trade secret information was willful and malicious.

44. As a direct and proximate result of Defendants' willful and malicious misappropriation of Plaintiff's confidential, proprietary, and trade secret information, Plaintiff has suffered and will continue to suffer actual damages, and Defendants have been unjustly enriched.

45. As a direct and proximate result of Defendants' willful and malicious misappropriation of Plaintiff confidential, proprietary, and trade secret information, Plaintiff is entitled to an award of actual damages, including but not limited to the

value of the unjust enrichment caused by Defendants' misappropriation and benefit therefrom, in an amount to be determined at trial.

46. As a direct and proximate result of Defendants' willful and malicious misappropriation of Plaintiff's confidential, proprietary, and trade secret information, Plaintiff also seeks an award of exemplary damages, attorney's fees, and costs.

47. As a direct and proximate result of Defendants' willful and malicious misappropriation of Plaintiff's confidential, proprietary, and trade secret information, and to prevent actual or threatened misappropriation of such information, Plaintiff also seeks injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A).

### COUNT II—Violation of the Michigan Uniform Trade Secrets Act
### (against all Defendants)

48. Plaintiff realleges all the foregoing paragraphs as if they were fully restated herein.

49. Plaintiff's confidential, proprietary, and trade secret information includes its customer lists and contact information, information about Plaintiff's customers' practices, requirements, and product designs, Plaintiff's financial and billing information, including its pricing for services and jewelry items, cost and profit structures.

50. This confidential, proprietary, and trade secret information individually

and collectively constitutes a "trade secret" within the meaning of the Michigan Uniform Trade Secrets Act (*i.e.,* M.C.L. § 445.1902(d)).

51. Plaintiff has taken reasonable measures to keep such confidential, proprietary, and trade secret information secret.

52. Plaintiff's confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

53. Defendants misappropriated Plaintiff's confidential, proprietary, and trade secret information by disclosing and using (and planning to disclose and use) said information without express or implied consent.

54. At the time Defendants disclosed and used (and planned to disclose and use) Plaintiff's confidential, proprietary, and trade secret information, Defendants knew or had reason to know that they acquired said information in confidence, including: through improper means; under circumstances giving rise to Defendants' duties to maintain the secrecy of said information and limit its use; and from or through individuals who owed a duty to maintain the secrecy of said information and limit its use.

55. Defendants' misappropriation of Plaintiff's confidential, proprietary, and trade secret information was willful and malicious.

56. As a direct and proximate result of Defendants' willful and malicious misappropriation of Plaintiff's confidential, proprietary, and trade secret information, Plaintiff has suffered and will continue to suffer actual damages, and Defendants have been unjustly enriched.

57. As a direct and proximate result of Defendants' willful and malicious misappropriation of Plaintiff's confidential, proprietary, and trade secret information, Plaintiff is entitled to an award of actual damages, including but not limited to the value of the unjust enrichment caused by Defendants' misappropriation and benefit therefrom, in an amount to be determined at trial.

58. As a direct and proximate result of Defendants' willful and malicious misappropriation of Plaintiff's confidential, proprietary, and trade secret information, Plaintiff also seeks an award of exemplary damages, attorney's fees, and costs.

59. As a direct and proximate result of Defendants' willful and malicious misappropriation of Plaintiff's confidential, proprietary, and trade secret information, and to prevent actual or threatened misappropriation of such information, Plaintiff also seeks injunctive relief pursuant to M.C.L. § 445.1903.

### COUNT III—Breach of Restrictive Agreement
### (against Defendant Shiklanian)

60. Plaintiff realleges all the foregoing paragraphs as if they were fully restated herein.

61. The Restrictive Agreement is a valid, binding contract supported by valuable consideration.

62. Plaintiff has fully performed its obligations under the Restrictive Agreement.

63. By virtue of Defendant Shiklanian's aforementioned conduct, Defendant Shiklanian has breached her contractual obligations under the Restrictive Agreement.

64. As a direct and proximate result of her breaches, Defendant Shiklanian will be liable to Plaintiff for consequential damages.

### COUNT IV—Tortious Interference with Contract
### (against All Defendants)

65. Plaintiff realleges all the foregoing paragraphs as if they were fully restated herein.

66. The Restrictive Agreement is a contractual relationship between Plaintiff and Defendant Shiklanian related to duties and obligations owed by Defendant Shiklanian to Plaintiff during and after the termination of her employment with Plaintiff.

67. Defendant Taline's Fine Jewelry was aware of the Restrictive Agreement.

68. Defendant Taline's Fine Jewelry intentionally and improperly interfered with, and will intentionally and improperly interfere with, the Restrictive

Agreement, including, but not limited to, by inducing Defendant Shiklanian to breach the Restrictive Agreement through: forming a new competing company; and using Plaintiff's confidential and trade secret information known to Defendant Shiklanian to solicit Plaintiff's customers and clients and compete with Plaintiff for customers and clients.

69. Defendants' intentional and improper conduct was and is *per se* wrongful, or was done without justification and for the sole purpose of interfering with the Restrictive Agreement.

70. Plaintiff has been, and will continue to be, injured by Defendant Taline Fine Jewelry's intentional and improper acts of tortious interference.

### COUNT V—Tortious Interference with Business Expectancy
### (against All Defendants)

71. Plaintiff realleges all the foregoing paragraphs as if they were fully restated herein.

72. Plaintiff enjoys valid business relationships and expectancies with its customers, prospective customer accounts, and employees.

73. These business relationships and expectancies have a reasonable likelihood of future economic benefit to Plaintiff.

74. Defendants were aware of these business relationships and expectancies from Defendant Shiklanian.

75. Defendants intentionally and improperly interfered with, and will

15

intentionally and improperly interfere with, these business relationships and expectancies, including, but not limited to, by forming a new competing company; and using Plaintiff's confidential and trade secret information known to Defendant Shiklanian to solicit Plaintiff's customers and clients and compete with Plaintiff for customers and clients.

76. Defendants' intentional and improper conduct was and is *per se* wrongful, or was done without justification and for the sole purpose of interfering with Plaintiff's business relationships and expectancies.

77. Plaintiff has been, and will continue to be, injured by Defendants' intentional and improper acts of tortious interference.

### COUNT VI—Unjust Enrichment/Quantum Meruit
### (against All Defendants)

78. Plaintiff realleges all the foregoing paragraphs as if they were fully restated herein.

79. By virtue of its aforementioned intentional misconduct and improper interference with Plaintiff's confidential and trade secret information and customers and prospective customers, Defendants have received a substantial benefit from Plaintiff.

80. Defendants' retention of funds it has or will earn through the use of Plaintiff's confidential and trade secret information allowed or will allow Defendants to become unjustly and inequitably enriched to the detriment of Plaintiff.

81. Under the circumstances, it is inequitable for Defendants to retain the benefits it has received or will receive from their intentional misconduct and improper interference with Plaintiff's confidential and trade secret information and customers and prospective customers without approval or agreement from Plaintiff.

82. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered and will continue to suffer damages.

### REQUEST FOR INJUNCTIVE RELIEF AGAINST ALL DEFENDANTS

83. Plaintiff realleges all the foregoing paragraphs as if they were fully restated herein.

84. Defendants' misappropriation of Plaintiff's confidential, proprietary, and trade secret information constitutes a transgression of a continuing nature, for which there is no adequate remedy at law.

85. Defendant Shiklanian's breaches of her contractual obligations to Plaintiff constitute transgressions of a continuing nature, for which there is no adequate remedy at law.

86. Defendant Shiklanian, through and because of Plaintiff, has developed goodwill with Plaintiff's clients, prospective clients, and employees.

87. Unless restrained and enjoined, preliminarily and permanently, Defendants will continue to use Plaintiff's confidential, proprietary, and trade secret information on behalf of themselves and their new company to compete with

Plaintiff for Plaintiff's contractual relationships, business relationships and expectancies, and employees.

88. Unless Defendants are restrained, their actions will also continue to cause non-quantifiable and irreparable damages to Plaintiff's goodwill and long-standing contractual relationships, business relationships and expectancies, and employees.

89. The harm to Plaintiff in the absence of an injunction substantially outweighs any alleged harm to Defendants if an injunction is issued.

90. The public interest will not be harmed if an injunction is issued.

## RELIEF REQUESTED

For all the foregoing reasons, Plaintiff D. M. Rottermond Inc., through its attorneys, Clark Hill PLC, respectfully requests that the Court enter judgment against Defendants Taline Shiklanian and Taline's Fine Jewelry LLC as follows:

**A.  LEGAL RELIEF**

1. Compensatory, economic, noneconomic, exemplary, and punitive damages in whatever amount it is found to be entitled; and

2. An award of interest, costs and contractual attorney fees.

**B.  DECLARATORY AND EQUITABLE RELIEF**

1. An order out of this Court preliminarily and permanently enjoining Defendants from misappropriating Plaintiff's trade secrets and enjoining Defendant Shiklanian from violating the restrictive covenants in the Restrictive Agreement;

    2.    An award of exemplary damages, punitive damages, interest, costs, and contractual attorneys' fees; and

    3.    Whatever other declaratory and/or equitable relief appears appropriate at the time of final judgment.

Dated: February 23, 2021

Respectfully submitted,
**CLARK HILL PLC**

*/s/Benjamin I. Shipper*_____
**Jeremy S. Motz (P69022)**
151 S. Old Woodward Ave., Suite 200
Birmingham, MI 48009
(248) 988-5895
jmotz@clarkhill.com
   -and-
**Benjamin I. Shipper (P77558)**
500 Woodward Ave., Suite 3500
Detroit, Michigan 48226
(313) 965-8300
bshipper@clarkhill.com
*Attorneys for Plaintiff*

# VERIFICATION/DECLARATION

STATE OF MICHIGAN )
) ss
COUNTY OF OAKLAND )

I depose and state that I am a representative of D. M. Rottermond Inc.; that I have the requisite authority to verify, and act as a Declarant in support of, the aforementioned Verified Complaint for Injunctive and Other Relief ("Verified Complaint") on behalf of D. M. Rottermond Inc.; that I have read the factual allegations contained in the foregoing Verified Complaint, and have knowledge of the allegations contained in it; and that I declare under penalty of perjury that the factual allegations contained in the Verified Complaint are true and correct.

_____
D. M. ROTTERMOND INC.
By: Dean Rottermond
Its: President
Executed on: 23 FEB 2021