UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D.M. ROTTERMOND INC. and
DEAN ROTTERMOND,

     Plaintiff,

v.

     Case No. 2:21-cv-10393
     District Judge Paul D. Borman
     Magistrate Judge Kimberly G. Altman

TALINE SHIKLANIAN and
TALINE'S FINE JEWELRY LLC,

     Defendants.

_____/

**REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION FOR
ENTRY OF AN ORDER TO SHOW CAUSE WHY DEFENDANTS
SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING THIS
COURT'S ORDER GRANTING PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION (ECF No. 26)**

I. Introduction

This case involves the alleged post-employment breach of a non-compete

agreement.  On February 23, 2021, Plaintiffs D. M. Rottermond, Inc. and Dean

Rottermond (collectively "Rottermond") filed their complaint against defendants

Taline Shiklanian and Taline's Fine Jewelry, LLC.  (ECF No. 1).  At the same

time, Rottermond filed an ex parte motion for temporary restraining order and

preliminary injunction against defendants.  (ECF No. 2).  Following a hearing, on

March 22, 2021, District Judge Paul D. Borman granted Rottermond's motion for a

1

preliminary injunction, finding a significant likelihood of success on the merits for Rottermond.  (ECF No. 21, PageID.258) ("Injunction Order").  As a result, the Court extended the end date of the non-compete agreement for an additional 90 days from its original end date of March 16, 2021.  (ECF No. 21, PageID.260).

Rottermond now moves for an order requiring the defendants to appear and show cause why they should not be held in contempt for violating the Injunction Order.  (ECF No. 26).  Defendants responded, and Rottermond replied, noting an additional alleged violation.  (ECF Nos. 29, 31).  The motion was referred under 28 U.S.C. § 636(b)(1)(B) to the undersigned, and a hearing was held on May 20, 2021.  (ECF Nos. 27, 33).  Considering the parties' arguments and submissions through their briefs and exhibits, the undersigned recommends that Rottermond's motion be granted in part and denied in part, and that defendants be ordered to appear before Judge Borman to show cause why they should not be found in contempt for the conduct described below.

## II.  Background

As set forth in Judge Borman's Injunction Order, D. M. Rottermond is a high-end jeweler with two locations in the greater Detroit area, one in Milford, Michigan and one in Brighton, Michigan.  Shiklanian worked for D. M. Rottermond out of the Milford location, and signed an agreement on June 28, 2017

that contained a non-compete clause.  That clause reads, in relevant part, as

follows:

> I agree for one (1) year following the end of my association with
> Rottermond, and within a 25-mile radius of Rottermond, not to engage
> in or contribute my knowledge to any work which is competitive with
> the work that I did while at Rottermond at any time during the period
> of one (1) year immediately before my association ended.

Shiklanian was terminated from Rottermond on March 16, 2020, and in November

2020, opened Taline's Fine Jewelry, LLC, which competed with Rottermond

within the 25-mile radius of its stores and within the year following her

termination.  (ECF No. 1-1; ECF No. 21, PageID.257-258).

Judge Borman found that in operating Taline's Fine Jewelry, defendants had

flouted the terms of the agreement, and that the appropriate remedy for this

flouting was to grant a preliminary injunction extending the period of the non-

compete agreement March 16, 2021 for 90 days to June 14, 2021.  (ECF No. 21,

PageID.259-260).  The Injunction Order provides in relevant part:

> Pursuant to Fed. R. Civ. P. 65 because Defendants have flagrantly
> violated the reasonable non-compete agreement, the Court enters this
> Preliminary Injunction. Defendants continue to be restrained and
> enjoined, until June 14, 2021, from directly or indirectly, whether alone
> or in concert with others, from violating the noncompetition agreement,
> from engaging in jewelry business activity and/or sales, within 25 miles
> of Plaintiff's jewelry stores in Milford and Brighton.

(ECF No. 21, PageID.262).  Shiklanian has claimed to have closed the Howell

storefront for Taline's Fine Jewelry after the order was entered, planning to reopen

3

after the expiration of the injunction, and Rottermond does not provide evidence to dispute this claim.

Rottermond now seeks an order for defendants to show cause, contending that Taline's Fine Jewelry is violating the Injunction Order by continuing to sell jewelry through the Internet and social media, and by directing advertisements at potential customers within the 25-mile radius covered by the non-compete agreement.  (ECF No. 26).  In support, Rottermond has attached and relies on various posts from the Facebook page for Taline's Fine Jewelry advertising jewelry and being engaged with by users from within the restricted area. Defendants argue that this activity is not in violation of the non-compete agreement or the Court's preliminary injunction.

### III.  Standard for Contempt

Under 28 U.S.C. § 636(e)(6)(B), where "[an] act constitutes civil contempt, the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served upon any person whose behavior is brought into question ... an order requiring such person to show cause why that person should not be adjudged in contempt by reason of the facts so certified."

Here, the conduct complained of would constitute civil contempt.  "[A] contempt is considered civil when the punishment is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses

against the public." *McCrone v. United States*, 307 U.S. 61, 64 (1939).  Civil

contempt must be established by clear and convincing evidence.  *Glover v.*

*Johnson*, 138 F.3d 229, 244 (6th Cir. 1998).  "[A]mbiguities [in the Court's order]

must be resolved in favor of persons charged with contempt."  *Grace v. Ctr. for*

*Auto Safety*, 72 F.3d 1236, 1241 (6th Cir. 1996) (citing *NBA Properties, Inc. v.*

*Gold,* 895 F.2d 30, 32 (1st Cir. 1990) (Breyer, J.)).  Where it is established that a

party has violated a court order, the burden shifts to that party to show an inability

to comply.  *United States v. Rylander*, 460 U.S. 752, 757 (1983).  "The award of

attorney's fees and expenses to a successful movant may be appropriate in a civil

contempt proceeding."  *TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th

Cir. 1983).

## IV.  Analysis

### A.  Certified Facts

As noted above, Rottermond relies on postings from the Facebook page of

Taline's Fine Jewelry to support their argument that defendants are in contempt of

the Injunction Order.  The first post was made on April 1, 2021, within the

extended timeframe of the non-compete agreement.  The post says:

> Taline's Fine Jewelry in Howell is temporarily closed until the Grand
> Reopening on June 15, 2021 due to injunction filed by Dean
> Rottermond, owner of Rottermond Jewelers.

I am able to do business outside the 25 mile radius from both of his locations.  Please DM me.  Thank you everyone for your support! www.talinejewelry.com.

(ECF No. 26-6, PageID.452).  The post was "liked" by at least three individuals, whose Facebook profiles as attached indicate that one works in Plymouth, Michigan, one works in Ann Arbor, Michigan, and one lives in Novi, Michigan. (*Id.*, PageID.453-456).

On the same day, a second post from Taline's Fine Jewelry's Facebook page indicated that there were specials for the month of April, including diamond rings of various weights and shapes, with the "hashtags" #diamondrings #perfectgift #mothersday #cantstopwontstop.[1]  (ECF No. 26-7, PageID.458).  This posted was commented on by an individual residing in Howell, Michigan, and "liked" by at least three individuals as well, one of whom works in Plymouth, Michigan.  (*Id.*, PageID.459-461).

In addition to the above two postings, Rottermond relies on a third Facebook post from Taline's Fine Jewelry that consists of a shared post from Radiant Fine Jewelry, indicating that Radiant is located in Plymouth, Michigan (within the

---

[1] "A 'hashtag' is a form of metadata consisting of a word or phrase prefixed with the 'hash' symbol '#' (e.g. #Sacramento, #painting, and #iplaw).  Hashtags are often used on social-networking sites to identify or facilitate a search for a keyword or topic of interest.  Hashtags are used in social media by businesses to promote products and disseminate news."  § 7:17.70. Internet hashtags, 1 McCarthy on Trademarks and Unfair Competition § 7:17.70 (5th ed.) (footnote removed).

restricted area) and stating that Shinola watches are available "in store and online" at Radiant.  (ECF No. 26-8, PageID.463).

Finally, in its reply brief, Rottermond submits a fourth Facebook post by Radiant Fine Jewelry from April 13, 2021, that was shared by Taline's Fine Jewelry's Facebook page on April 14, 2021.  (ECF No. 31-3).  The text of the post on Taline's Fine Jewelry's page states "WOW" and "if you can't wait till June 15, 2021 then you know who's got it."  (*Id.*).  The shared post from Radiant states that the store has diamonds in all sizes, and contains several hashtags for areas such as Plymouth, Northville, Livonia, Farmington, Farmington Hills, and Novi, Michigan, which appear to be within the restricted area.  (*Id.*; *see* ECF No. 1-4).

## B.  Discussion

Rottermond argues that defendants are in violation of the Injunction Order because they are presently, " 'whether alone or in concert with others,' 'violating the non-compete agreement' [and] 'engaging in jewelry business activity and/or sales' " within 25 miles of a Rottermond jewelry store.  (ECF No. 26, PageID.430, quoting ECF No. 21, PageID.262).

Defendants' response does not dispute the legitimacy of the Facebook posts from Taline's Fine Jewelry, which were also verified by the undersigned.[2]  Rather,

---

[2] *See* https://www.facebook.com/Talinesfinejewelry (last accessed on May 4, 2021).  The Court takes judicial notice of these facts under Rule 201 of the Federal Rules of Evidence.  Because the facts in question are the contents of a Facebook

defendants argue that the online business activities of Shiklanian and Taline's Fine Jewelry are not in violation of the extended non-compete agreement or the Injunction Order because they do not take place within 25 miles of a Rottermond store.  (ECF No. 29).

Rottermond presents two theories of defendants' contemptuous conduct. First, Rottermond states that "although Defendants claim that they moved their *physical* operations well outside of the 25-mile zone, this claim is doubtful," due to the fact that Taline's Fine Jewelry is incorporated in Brighton, Michigan, and has a storefront in Howell, Michigan, both of which are within the restricted area.  (ECF No. 26, PageID.430).  However, stating that defendants' claim to be abiding by the injunction is "doubtful" does not meet Rottermond's burden to establish contemptuous conduct by clear and convincing evidence.  Rottermond falls well short of its burden on this point.

Secondly, Rottermond contends that even if the physical operations of Taline's Fine Jewelry were relocated outside of the restricted area, operation of its Facebook page demonstrates that the business continues to engage in business

---

page, and can be verified by visiting said Facebook page, the fact "is not subject to reasonable dispute" because the accuracy of the source "cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  "The court may take judicial notice at any stage of the proceeding," Fed. R. Evid. 201(d), and may do so *sua sponte*, Fed. R. Evid. 201(c)(1).  *See also Gibson v. Leblanc*, No. 2:20-CV-259, 2021 WL 222176, at *1, n.1 (W.D. Mich. Jan. 22, 2021).

activity and sales that violate the non-compete agreement and the Injunction Order. Rottermond states that this is due to direct advertising to the restricted area, facilitating the advertisements of others in the restricted area, and indeed any business or sales done through the social media presence that was developed while Taline's Fine Jewelry was operating during the initial timeframe of the non-compete agreement.  (ECF No. 26, PageID.430-431).

Rottermond also argues that defendants cannot avoid the 25-mile limitation by moving their physical operation outside of the area "while still using their social media presence to compete for and target the [protected] demographic."  (ECF No. 26, PageID.431).  Rottermond says that because the Facebook page was created by Taline's Fine Jewelry, which is located within the restricted area, any activity on the Facebook page comes within the scope of the non-compete agreement and the Injunction Order.  But Rottermond provides little authority that the non-compete agreement or Injunction Order must necessarily be read this way.

Defendants respond that Rottermond could have contracted with Shiklanian to prevent her from selling to customers who live within the restricted area, but did not do so by the language of the signed agreement.  (ECF No. 29, PageID.496).  In support, defendants rely largely on two cases outside of Michigan, noting that there did not appear to be any cases on this issue from Michigan.  (*Id*.).  The first case is *Sheehy v. Sheehy*, 299 Ill. App. 3d 996, 702 N.E.2d 200 (1998), in which the

plaintiff argued that the defendant had broken a restrictive covenant by becoming a

funeral director for a competing funeral home that, while not located within the

restricted zone, involved some activities within that zone.  The agreement in

*Sheehy* read, in relevant part, as follows:

> For a period of four years from the date of this Agreement, in consideration of this Agreement, [defendant] shall not:
>
> a) Directly or indirectly own, manage, operate, join, control, or participate in, or be connected as an officer, employee, partner, or otherwise with any funeral home business, or otherwise compete with the current business of the Company within a ten (10) mile radius of 7020 W. 127th Street, Palos Heights, Illinois (the 'Property').
>
> b) Canvass or solicit any business, individually or for any other funeral home, from any of the Company's prepaid clients or any member of the immediate family of any decedent for whom the Company has provided funeral services prior to the date hereof (collectively, 'Protected Clients') or from any potential clients within a 10 mile radius of the Property ... .

*Sheehy v. Sheehy*, 702 N.E.2d at 203 (1998).  The court noted that when a contract

is unambiguous, its construction is a question of law for the court.  *Id*., at 204.

This is true under Michigan law as well.[3]  Under this framework, the court found

that defendant's attendance of classes and business meetings within the restricted

---

[3] *See Lozada v. Dale Baker Oldsmobile, Inc.,* 197 F.R.D. 321, 339 (W.D. Mich. 2000) ("When the contract terms are plain and unambiguous, a court will construe the contract as it is written and presume the parties' intent is consistent with the ordinary meaning of the terms in the contract.") (citing *Pierson Sand & Gravel, Inc. v. Pierson Township,* 851 F. Supp. 850 (W.D. Mich. 1994)); *Britton v. John Hancock Mut. Life Ins. Co.,* 30 Mich. App. 566, 569, 186 N.W.2d 781 (1971) ("Contracts which are unambiguous are not open to construction and must be enforced as written.") (citations omitted).

10-mile zone did not violate the agreement, nor did defendant's attendance at burials located at cemeteries within the zone. *Id*. Specifically relating to those cemeteries, the court found that "any preclusion of defendant from entering cemeteries within a 10–mile radius should have been stated within the covenant." *Id*., at 205-206.

Rottermond distinguishes *Sheehy* because in that case, the defendant was not engaged in competitive, client-facing activity within the restricted area. (ECF No. 31, PageID.533). Rottermond specifically notes that the *Sheehy* court relied on the defendant's testimony that he "never conducted funerals from funeral homes within the 10–mile radius, nor did he conduct funerals for any decedent who lived within the 10–mile radius," nor did he "solicit any business from any families within the 10–mile radius." *Sheehy*, 702 N.E.2d at 207 (1998). However, as defendants note, the agreement between Rottermond and Shiklanian does not contain a non-solicitation provision, as the one in *Sheehy* does. (ECF No. 29, PageID.492).

Defendants also cite *Dental Prosthetic Servs., Inc. v. Hurst*, 463 N.W.2d 36 (Iowa 1990), an Iowa Supreme Court matter involving the manufacture, sale, and servicing of dental prosthetics, and the termination of a production manager, Hurst, who had signed a restrictive covenant with the plaintiff company. That agreement read:

11

> Upon the termination of Employee's employment.... Employee shall
> not directly or indirectly within a radius of 50 miles of Employer's
> place of business, enter into or engage in any business similar to the
> type of business conducted by Employer at the time of the termination
> of this Agreement ... for a period of three (3) years after the date of
> termination of his/her employment hereunder.

*Id.*, at 38. The court found that Hurst had opened a laboratory just outside of the

50-mile radius in the agreement, but that there was no dispute that he performed

services for dentists located within the 50-mile radius. *Id.* Despite this, the court

ruled that Hurst had not violated the agreement by providing these services:

> Undoubtedly, DPS prepared the restrictive covenant to protect itself
> from the loss of customers. There is no language in the agreement,
> however, that prohibits Hurst from contacts with former customers or
> accepting work from them. The fact that DPS's attorney drew up the
> contract invokes the principle that doubtful language in a written
> instrument is construed against the drafting party.[4] In this case, any
> ambiguity in the term "business" and the surrounding language should
> be construed against DPS, the drafting party.

*Id.*, at 39 (internal citation omitted).

Rottermond notes that *Hurst* is not entirely on point, because "the type of

business in which Hurst was prohibited from engaging under the language used in

this covenant relates to the bulk of the dental prosthetic business—the

---

[4] The rule is the same under Michigan law. *See Higgins v. Lawrence,* 107
Mich.App. 178, 309 N.W.2d 194, 196 (1981) ("It is well settled in the law of
contracts that language will be construed against the party drafting the
instrument.") (citations omitted); *see also De Bruyn Produce Co. v. Romero,* 202
Mich.App. 92, 508 N.W.2d 150, 156 n. 4 (1993) ("an ambiguous document must
be construed against the drafter of the document").

manufacturing process.  In arriving at this conclusion, we recognize that a different interpretation may have been required if the facts showed that Hurst spent substantial time in the restricted area soliciting business."  *Id*.  Here, the bulk of the jewelry business in which Rottermond and Shiklanian are engaged is sales, which may lead to a different reading of the agreement.  However, it remains to be demonstrated whether defendants' online activities constitute business within the restricted area.

Defendants argue that if Rottermond had intended to prohibit Internet sales from outside of the restricted area to customers within that area, it could have included language to do so, citing *PWG Franchising, LLC v. FTL Enterprises, Inc.*, 2015 WL 12684458, at *4 (M.D. Fla. Mar. 2, 2015) ("The restrictive covenant prevents competitive activity: … via the internet or other form of e-commerce, or … within forty miles of [the plaintiff's] business.").  While it is undeniably true that Rottermond could have included such language, Rottermond correctly retorts that online business activity may be restricted by agreements that do not specifically refer to online or Internet sales.  Indeed, in *McKeon Prod., Inc. v. Honeywell Safety Prod. USA, Inc.*, 2021 WL 287729, *1 (E.D. Mich. Jan. 28, 2021) (Borman, J.), a consent order was entered between the parties that defendant Honeywell would not sell its product, MAX and MAX-LITE earplugs, to buyers defined as the "Retail Market," due to possible confusion with plaintiff McKeon's

13

product, MACK'S earplugs.  Honeywell was free to sell to a defined "Industrial

Safety Market," as well as anywhere else that was not prohibited by the consent

order.  *Id*., at *2.  Honeywell argued that the consent order, strictly construed, did

not prohibit online sales, but the court found that nothing in the agreement limited

the Retail Market to physical, "brick-and-mortar" locations.  *Id*., at *6.  Thus,

online sales to retail purchasers would violate the consent order, and Honeywell

"conceded that it has not taken any steps to limit its [online] sales to industrial-

safety market customers."  *Id*.  As the court stated, "the Internet is not a 'market,'

but rather a platform or method of providing a product to a customer."

    *McKeon* is informative, but does not end the inquiry or answer its ultimate

question.  It is clear that Rottermond could have prohibited online sales to

customers within the restricted area.[5]  It is equally clear that defendants could in

theory run afoul of the non-compete agreement and the Injunction Order by

engaging in online sales in a certain manner.  For instance, if Shiklanian were

operating from a computer within the restricted area while posting advertisements

or fulfilling online sales, this would likely contravene the plain language of the

non-compete agreement.  Rottermond has not demonstrated that this is the case; in

fact, Rottermond only alludes to its own disbelief that defendants no longer operate

---

[5] However, defendants contend that this may be overbroad or otherwise
unenforceable.  (ECF No. 29, PageID.500).

out of the Howell storefront, with no evidence whatsoever that this may not be the case. This leaves the Court to determine whether sales to customers within the restricted area, from a point of operation outside of the restricted area, violates the agreement or the injunction.

In *United Rentals (N. Am.), Inc. v. Keizer*, 355 F.3d 399 (6th Cir. 2004), a similar question was considered. There, United Rentals sued defendant Keiser for violating a covenant-not-to-compete in his employment agreement by selling construction equipment and soliciting customers from within a proscribed geographic area called the "Target Area." *Id.*, at 401. Keiser was prohibited by the agreement from "directly or indirectly ... engag[ing] in the operation of any equipment sale, rental or leasing business" in the Target Area. *Id.*

> The central question is: What does it mean to engage in the operation of a competing business in the Target Area? United argues that soliciting business from and selling to customers within the Target Area is tantamount to operating a business in the Target Area. Defendants argue that to operate a business in the Target Area the business must be physically located in the Target Area. In this Court's view, Defendants are correct.

*Keizer*, 355 F.3d at 406. The court reasoned that a retail store located within Grand Rapids would not be considered to be operating in Newaygo County even if a customer traveled to Grand Rapids from Newaygo County to purchase goods, and *even if the Grand Rapids store actively advertised in Newaygo*. *Id*. It would be the same whether this hypothetical store operated out of Grand Rapids or the

15

North Pole.  *Id.*  Despite sending direct mailings, making telephone calls, and selling and delivering goods to customers in the Target Area, the business would not be in violation of the agreement as it was not itself located in the Target Area.

Here, Shiklanian agreed that "within a 25-mile radius of Rottermond," she would not "engage in or contribute [her] knowledge to any work" competitive with Rottermond.  (ECF No. 1-1, PageID.22).  The undersigned finds that defendants' advertising and selling jewelry online and directing people to www.talinejewelry.com[6] through the Facebook page of Taline's Fine Jewelry is not "within a 25-mile radius of Rottermond," despite where interactions are from or where any sales are ultimately made.[7]  Rottermond focuses more on the language from the conclusion of the Injunction Order, preventing defendants "from violating the noncompetition agreement, from engaging in jewelry business activity and/or sales, within 25 miles of Plaintiff's jewelry stores in Milford and Brighton."  (*See generally* ECF No. 26, quoting ECF No. 21, PageID.262).  The undersigned does not interpret this language as reaching a different result from the analysis under the language of the non-compete agreement, nor does it appear that

---

[6] Rottermond's counsel appeared to acknowledge at oral argument that use of www.talinejewelry.com alone, and not in conjunction with the Facebook page, would not violate the non-compete agreement.

[7] At oral argument, defense counsel indicated that defendants have not made any sales since the Injunction Order was entered.

16

Judge Borman intended to expand upon the non-compete agreement other than adjusting its duration.  (*See* ECF No. 21, PageID.259-260 ("Courts can choose to extend the period of the non-compete where the breaching party had flouted the terms of a non-compete agreement, and that is clearly what we have here. … As a result of the Defendants' continuing flouting of the non-compete agreement, the Court will extend the end date of the non-compete agreement from March 16, 2021 for 90 days to June 14, 2021.")).  Though Rottermond argues that the operation of the Taline's Fine Jewelry Facebook page alone is impermissible, the non-compete agreement must be construed against its drafter, and ambiguities in the Injunction Order allegedly violated must be resolved in the defendants' favor.

In reviewing the substance of the postings in light of the above, the undersigned concludes that the two postings on April 1, 2021 do not violate the terms of the non-compete agreement or the Injunction Order.  Rather, they alert viewers that Taline's Fine Jewelry is not open for business, but sales can be made via Shiklanian's website.

However, the Facebook postings which share posts from Radiant Fine Jewelry are another matter.  One post identifies Radiant Fine Jewelry as a physical jewelry store located in Plymouth, Michigan and advertises Shinola watches, a brand that Rottermond also sells.  (ECF No. 26-8, PageID.463).  The other is a diamond advertisement with directed hashtags at several cities within the restricted

area set forth in Rottermond's non-compete agreement with Shiklanian.  (ECF No. 31-3).  The post also states that "if you can't wait" until Taline's Fine Jewelry's reopening, "you know who's got it!"  (*Id*.).  Radiant Fine Jewelry is physically located within the restricted area, and by sharing its advertisements to their audience, defendants have engaged in Radiant's work.  Radiant is clearly competitive with the work that Shiklanian did while at Rottermond, making each post a clear instance of contemptuous conduct.

### C.  Recommended Sanctions

Civil contempt accomplishes three goals: "(1) it vindicates the Court's authority, at least incidentally; (2) it coerces defendants' compliance with the Court's preliminary injunction; and (3) it compensates [Rottermond] for the injuries it has sustained as a result of defendants' violations of the preliminary injunction and the compulsion order."  *Stryker Corp. v. Prickett*, No. 1:14-CV-01000-RHB, 2016 WL 4433679, at *11 (W.D. Mich. July 22, 2016), *report and recommendation adopted,* No. 1:14-CV-1000, 2016 WL 4415041 (W.D. Mich. Aug. 19, 2016) (citing *TWM Mfg. Co., Inc.,* 722 F.2d at 1273 ("Although civil contempt may serve incidentally to vindicate the court's authority, its primary purposes are to compel obedience to a court order and compensate for injuries caused by noncompliance.") (citation omitted)).

Here, defendants have not been shown by clear and convincing evidence to be operating a continuing enterprise in violation of the Injunction Order or the extended non-compete agreement, nor have they convincingly demonstrated lost profits, or any profits to defendants.

However, the undersigned concludes that there have been two instances of contemptuous conduct.  As such, the undersigned recommends (1) that defendants be ordered to appear before the Honorable Paul D. Borman upon a day certain to be set by the Court to show cause why they should not be found in contempt by reasons of the facts certified in this Report and Recommendation; (2) that if the Court agrees that defendants are in contempt, defendants be fined $100.00 for each of the two infractions identified herein; (3) that if by the date of the hearing, defendants have not ceased all offending activities, they be found in further contempt and subject to additional sanctions for civil contempt as determined by the Court; and (4) plaintiffs be awarded reasonable costs and attorney fees in proportion to the level of offending activity.

V.  Conclusion

Accordingly, for the reasons stated above, the undersigned recommends that

Rottermond's motion for entry of an order to show cause (ECF No. 26) be

**GRANTED IN PART AND DENIED IN PART**.


Dated: June 2, 2021                              s/Kimberly G. Altman
Detroit, Michigan                                KIMBERLY G. ALTMAN
                                                 United States Magistrate Judge


## <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 2, 2021.

s/Marie E. Verlinde
MARIE E. VERLINDE
Case Manager
